IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

AVION TRAMAINE LAWSON,

      Plaintiff,

v.                          CASE NO. 5:15-cv-150-MP-GRJ

J M CRUTCHFIELD, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is ECF No. 24, Defendants' Motion to Dismiss. Plaintiff has filed a response to Defendants' motion, (ECF No. 26), and therefore the motion is ripe for review. For the following reasons, it is recommended that the motion to dismiss be granted.

### I. Background

Plaintiff, a prisoner in the custody of the Florida Department of Corrections ("FDOC") at Santa Rosa Correctional Institution ("Santa Rosa CI"), initiated this case on June 25, 2015, by filing a *pro se* complaint under 42 U.S.C. § 1983 asserting claims against six defendants. (ECF No. 1.) Plaintiff subsequently filed a first amended complaint on July 21, 2015,

which asserts claims against five defendants: J.M. Crutchfield, Colonel

Ricky E. Silcox, Captain Jerry Shuler ("J. Shuler"), Officer J.W. Shuler

("J.W. Shuler"), and Officer Gafford. (ECF No. 8.) Plaintiff claims that

Defendants J.W. Shuler, Crutchfield, and Gafford used excessive force on

Plaintiff in violation of the Eighth Amendment. (*Id.* at 8.) Plaintiff also

asserts that Defendants Silcox and J. Shuler failed to intervene in

retaliation for Plaintiff exercising his First Amendment right. (*Id.*)

Plaintiff says that on February 24, 2015, Defendants Silcox and J.

Shuler ordered officers to disrupt and search Plaintiff's cell. Plaintiff claims

that this was in retaliation for Plaintiff previously filing grievances. One

officer told Plaintiff to strip down to his boxers and submit to restraints for

the cell search. Plaintiff says that he complied. Defendant Gafford then

pinned Plaintiff to the wall by twisting Plaintiff's arm, smashed Plaintiff's

face into the wall, and punched Plaintiff in the ribs. Plaintiff alleges that

Defendants Silcox and J. Shuler were present, but failed to intervene in

Defendant Gafford's use of excessive force. During the search, the officers

allegedly destroyed between $300 and $500 worth of Plaintiff's legal work,

pillow, and sheet. Defendants then wrote Plaintiff a false disciplinary report

for destruction of state property.

After the search, the officers placed Plaintiff back in his cell and Defendants Silcox and J. Shuler came to the door of Plaintiff's cell laughing and taunting Plaintiff. Silcox and Shuler alleged said: "[T]hat'll teach you nigger boy about writing grievances on us." (ECF No. 8 at 6.) Defendant Silcox allegedly stated, "we told you we were going to get you didn't we and I'm going to have your scrawny ass gassed boy. Crutchfield will deal with you, that's great balls of fire there boy." (*Id.*) Defendant J. Shuler then said, "you think [Captain] Marshall and [Captain] Barber gassed your ass I'll show you a real gas chamber." (*Id.*)

Plaintiff claims that Defendants Silcox and J. Shuler maliciously ordered Defendant Crutchfield to gas Plaintiff for the purpose of causing bodily injury with unnecessary excessive force. Defendant Crutchfield then ordered another sergeant to use dangerous amounts of chemical agents on Plaintiff, which caused burning sensations for two days, skin irritation, nasal discharge, discoloration of hte skin, and damage to Plaintiff's vision and hearing. Plaintiff says that during the gassing, J.W. Shuler held the video camcorder and failed to intervene.

Afterwards, Plaintiff was permitted to take a cold shower. Defendant Crutchfield, however, then ordered that Plaintiff be placed back into the

same cell that was still filled with chemical agents. Plaintiff says this put his health at risk because tear gas was all over the sink, toilet, walls, floor, and was also lingering in the air. For two days, Plaintiff was forced to sleep in the gas-filled cell without a mattress, pillow, sheets, or blanket. Plaintiff was also not provided cleaning supplies to clean his cell.

Plaintiff asserts that he has exhausted administrative remedies. He claims that Defendants J.W. Shuler, Crutchfield, and Gafford used excessive force in violation of the Eighth Amendment. Plaintiff also says that Defendants Silcox and J. Shuler violated Plaintiff's First Amendment right by failing to intervene and protect Plaintiff in retaliation for previous grievances that Plaintiff filed against prison officials. Plaintiff seeks declaratory relief, compensatory damages, and punitive damages.

## II.  Motion to Dismiss

Defendants seek to dismiss Plaintiff's complaint, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing his complaint, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 24.) In support thereof, Defendants have provided a declaration of Kristi Jacobsen, Sentence Specialist at Santa Rosa CI. (ECF No. 24-1, Ex. A, "Jacobsen Dec." Ms. Jacobsen reviewed all available

grievance records for Plaintiff from February 24, 2015, through May 1, 2015, regarding use of force and retaliation. (*Id.* ¶ 3.) Ms. Jacobsen found that all of the informal and formal grievances Plaintiff filed during that time period related to use of force and retaliation were either denied or returned without action. (*Id.*)

Defendants have also provided a declaration of Shirley Johnson, Operations Analyst I with the Florida Department of Corrections' Bureau of Inmate Grievance Appeals, (ECF No. 24-2, Ex. B, "Johnson Aff."), as well as copies of eleven grievance appeals. (ECF No. 24-2, Exs. 1–11.) According to Ms. Johnson, the Bureau of Inmate Grievance Appeals ("Bureau") maintains all grievance appeals and any grievances filed directly with the Bureau. (Johnson Aff. ¶ 2.) Ms. Johnson represents that the only grievances the Bureau received from Plaintiff between February 24, 2015, and May 1, 2015, were the eleven attached grievance appeals. (*Id.* ¶ 3.) Of the eleven grievance appeals, two were returned without action, one was approved, and eight were denied. Accordingly, only nine grievance appeals—the one approved appeal and the eight denied appeals—are relevant for purposes of exhaustion.

Only one of the nine relevant grievance appeals references the

alleged February 24, 2015 assault.  Specifically, grievance appeal number 15-6-09015 challenged the disciplinary report Plaintiff received on February 24, 2015. (*Id.*, Ex. 5.)[1] The appeal was denied. (*Id.*) Accordingly, Defendants argue that Plaintiff has not properly exhausted his administrative remedies with respect to his Eighth Amendment and First Amendment claims.

Plaintiff, however, asserts that he did exhaust his administrative remedies via grievances to the Secretary of the Department of Corrections. (ECF No. 26.) Plaintiff has attached copies of the two grievances that he says exhausted his claim of reprisal, dated March 7, 2015, and March 16, 2015. (*Id.* at 2.) These grievances—one a formal grievance, and one an appeal to the Bureau—are the same grievances that Defendants provided.

---

[1] The formal grievance attached to the appeal—grievance number 1503-119-178—references Defendants' property destruction, restraint, taunting, gassing, and failure to intervene in retaliation for writing grievances. (*Id.*) The focus of the formal grievance was on the disciplinary proceedings. Specifically, Plaintiff wrote in the grievance that the reporting officer "failed to note and include in the statement of acts all witnesses to the incident," that the investigating officer "failed to interview my witness," "failed to call the camera as my witness showing all named officers above in my cell ripping up my case load, pillow [and] sheet violating due process." (*Id.*) As relief Plaintiff requested to have his disciplinary report dismissed. (*Id.*) The institution interpreted Plaintiff's formal grievance as complaining that Plaintiff's disciplinary report "failed to provide witness statements and camera evidence during the investigation process, violat[ed] [Plaintiff's] due process, and [that Plaintiff] seek[s] remedy in the DR being overturned." (*Id.*) The formal grievance was denied. (*Id.*) On appeal to the Bureau, Plaintiff argued that his due process rights were violated and requested that the disciplinary report be overturned. (*Id.*)

(*Id.*, Ex. A.; ECF No. 24-2, Ex. 5.)

Plaintiff also says he exhausted his excessive force claim by filing an informal grievance the very next day, but that he never received a copy of the grievance. (*Id.* at 3.) Plaintiff further alleges that prison officials continuously threw away Plaintiff's grievances in retaliation for filing grievances. (*Id.* at 2.) In support of his allegations, Plaintiff has provided a sworn affidavit of inmate Harry Jefferson, in which Mr. Jefferson states that Defendants retaliated against Plaintiff, wrote false disciplinary reports on Plaintiff, gassed Plaintiff, and ripped up Plaintiff's grievances. (*Id.*, Ex. D.)

### III.  Standard of Review

For the purposes of the motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.,* 21 F. 3d 1532, 1534 (11th Cir. 1994). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed. R. Civ. P. 10(c); *GSW, Inc. V. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir. 1993).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009), the Supreme

Court of the United States articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): First, the court must determine what factual allegations in the complaint are entitled to a presumption of veracity; second, the court must then assess whether these facts give rise to an entitlement for relief. In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth." *Id.* at 681. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 546 (2007). "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. St. Lucie County School Bd.,* 399 F. App'x 563, 565 (11th Cir. 2010) (unpublished) (citations omitted) (applying the pleading standards of *Iqbal* and *Twombly* to a *pro se* complaint).[2]

---

[2] Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

## IV.  Discussion

The PLRA requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions. "This requirement is a 'pre-condition to suit' that must be enforced even if the available administrative remedies are 'futile or inadequate.'" *Logue v. Pearson,* No. CV410-240, 2011 U.S. Dist. LEXIS 66950, at *2–3 (S.D. Ga. 2011) (citing *Harris v. Garner,* 190 F.3d 1279, 1285–86 (11th Cir. 2005))*.* Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted. *Jones v. Bock,* 549 U.S. 199, 211 (2002)*.*

Further, the PLRA's exhaustion requirement contains a procedural default component; prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005). "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024–25 (7th Cir. 2002)).

To exhaust administrative remedies in Florida, a prisoner in FDOC custody must complete the administrative review process established under regulations promulgated by the Secretary of the FDOC. Fla. Stat. Ann. § 944.09(1)(d) ("The department has authority to adopt rules ... to implement its statutory authority. The rules must include rules relating to ... [g]rievance procedures which shall conform to 42 U.S.C. § 1997e."). Under the administrative review process established by the Secretary of the FDOC, a prisoner must: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Secretary of the FDOC. *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code Ann. §§ 33-103.001–103.019*). Once a prisoner has completed this process, he has properly exhausted his administrative remedies. *Id.*

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich*, 530 F.3d 1368, 1374, 1376 (11th Cir. 2008.) Accordingly, "[a] district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits

and the parties have a sufficient opportunity to develop the record."

*Singleton v. Dep't of Corrections*, 323 F. App'x 783, 785 (11th Cir. 2009).

Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082; *Whatley v. Warden*, 802 F.3d 1205, 1211–12 (11th Cir. 2015) (at first *Turner* step, district court must accept plaintiff's facts as true "and make the exhaustion determination on [plaintiff's] view of facts;" appellate review of results of first step is *de novo*). If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 802 F.3d at 1213 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second *Turner* step;

such findings are subject to review on appeal for clear error).[3]

   *Turner* also established, however, that an inmate is not required to grieve a "breakdown in the grievance process" because the PLRA only requires that a prisoner exhaust his "available administrative remedies." *Id.* at 1083-84 ("[I]t is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate."). In the context of retaliation or threatened retaliation, the *Turner* court concluded:

> We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Id.* at 1085. In order to successfully excuse a failure to exhaust, courts have generally concluded an inmate must allege more than just threats of retaliation, but instead must allege both such threats of retaliation as well

----

[3] In *Whatley*, the Eleventh Circuit reversed the dismissal of a complaint for failure to exhaust because the record did not reflect whether the district court dismissed the case on the first or second step of *Turner*, and thus, the Court could not evaluate whether the district court's conclusions should be reviewed under the *de novo* standard of the first *Turner* step or the "clear error" standard of the second *Turner* step. 802 F.3d at 1213. 6.

as the use of physical force against the inmate in response to the filing of grievances. *See*, *e.g.*, *Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004) (noting that if inmate was assaulted and threatened to keep him from complaining, exhaustion should be excused); *Kaba v. Stepp*, 458 F.3d 678, 684-86 (7th Cir. 2006) (exhaustion could be excused where prisoner was threatened with beating for filing grievances and threat was carried out).

Applying the requisite *Turner* analysis here, the factual allegations regarding Plaintiff's grievances in Defendants' motion to dismiss conflict with Plaintiff's response in two respects. First, Plaintiff claims that he exhausted administrative remedies regarding his excessive force claim by filing an informal grievance on February 25, 2015, a copy of which he never received. On the other hand, Defendants say that Plaintiff did not exhaust his administrative remedies with respect to the excessive force claim, nor have Defendants provided a copy of a February 25, 2015 grievance.

Secondly, Plaintiff alleges that prison officials threw away Plaintiff's grievances in retaliation for writing grievances. Alternatively, Defendants assert that copies of the informal and formal grievances are kept in an inmate's classification file and that all of Plaintiff's informal and formal

grievances filed regarding use of force and retaliation during the relevant time period were either denied or returned without action. Further, Defendants says they have provided copies of all of the grievance appeals that Plaintiff filed during the relevant time frame.

Because Plaintiff's factual allegations in his response conflict with Defendant's factual allegations in their motion to dismiss, the Court must accept Plaintiff's version of these facts as true. In that light, Defendants are not entitled to have the complaint dismissed for failure to exhaust administrative remedies. If Plaintiff filed an informal grievance on February 25, 2015 regarding the alleged excessive force, and if the grievance was approved, that would satisfy the exhaustion requirement as to the excessive force claim. Additionally, if Plaintiff filed grievances that were destroyed by prison officials, the grievance system would have been unavailable for Plaintiff to properly exhaust his administrative remedies.

Turning to step two of the *Turner* analysis, the Court must make specific factual findings regarding the factual disputes. First, the Court finds that Plaintiff did not properly exhaust his administrative remedies with respect to his excessive force claim via a February 25, 2015 grievance. Plaintiff's allegation that he wrote an informal grievance on February 25,

2015 that went unanswered fails to overcome Defendants' evidence demonstrating that there was a grievance system available to Plaintiff, that none of the informal grievances that Plaintiff filed were approved, and that Plaintiff failed to properly exhaust his administrative remedies with regard to the alleged events on February 24, 2015. *See Skipper v. Jones*, No. 3:12-cv-648-WHA, 2015 WL 5125778, at *5 (M.D. Ala. Aug. 31, 2015) (plaintiff's conclusory assertion that he wrote grievances that went unanswered failed to overcome Defendant's evidence showing grievance system was in place and that plaintiff failed to exhaust his administrative remedies). Even assuming Plaintiff did write an informal grievance on February 25, 2015, the evidence demonstrates that it was not approved, nor was the denial appealed to the Bureau.

The Court also finds that prison officials did not destroy Plaintiff's grievances or prevent him from utilizing the grievance system. Plaintiff's conclusory allegation that his grievances were thrown away also fails to overcome Defendant's evidence that there was a grievance system in place for Plaintiff to use and that Plaintiff failed to properly exhaust the alleged February 24, 2015 assault and retaliation. Plaintiff has failed to provide sufficient evidence to the Court that prison officials threw away

Plaintiff's grievances regarding the February 24, 2015 excessive force and retaliation. *See White v. Tharp*, No. 06-cv-01179-EWN-KLM, 2008 WL 596159, at *10 (D. Colo. Feb. 29, 2008) (plaintiff failed to demonstrate exhaustion where he failed to provide copies of grievances that prison officials allegedly threw away or any other evidence demonstrating that the grievances were filed).

Although Plaintiff provided an affidavit from Mr. Jefferson, swearing under penalty of perjury that Defendants ripped up Plaintiff's grievances, Mr. Jefferson's sworn affidavit fails to demonstrate that any grievances specifically related to the February 24, 2015 assault were destroyed by prison officials. To the extent that Mr. Jefferson's affidavit refers to generalized actions by prison officials, such allegations are merely conclusory. Further, Mr. Jefferson's references to other inmates are irrelevant to this case.  The fact that Defendants provided copies of various grievances filed after the alleged assault and retaliation belies Plaintiff's conclusory allegation that prison officials threw away his grievances.

All of Plaintiff's informal and formal grievances regarding retaliation and excessive force during the relevant time period were either denied or returned without action. (Jacobsen Dec. ¶3.) Further, only one of Plaintiff's

approved or denied grievance appeals even related to the February 24, 2015 incident—appeal number 15-6-09015. (ECF No. 24-2, Ex. 5; ECF No. 26, Ex. A.) But, appeal number 15-6-09015 did not properly exhaust his administrative remedies because the appeal concerned the institution's denial of Plaintiff's request that his disciplinary report be overturned based on due process violations.

Although Plaintiff's March 7, 2015 formal grievance—number 1503-119-178—references Defendants' property destruction, restraint, taunting, gassing, and failure to intervene in retaliation for writing grievances, it is evident from the complaints and requested relief therein that Plaintiff's complaint requested prison officials to investigate his disciplinary report proceedings. It is also evident from the institutional response that prison officials did not interpretPlaintiff's formal grievance as a complaint about the use excessive force or retaliation, but rather as a complaint about the alleged false disciplinary report and disciplinary proceedings. Moreover, Plaintiff's grievance appeal focuses solely on the disciplinary proceedings related to the disciplinary report and does not even mention excessive force or retaliation. (*Id.*); *see also supra* n.1.

The purpose of the grievance procedure and exhaustion requirement

is to alert prison officials to problems and allow prison officials time and

opportunity to address complaint internally before allowing the initiation of a

federal case. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Jones*,

549 U.S. at 219 (noting that the primary purpose of the exhaustion

requirement is "to alert prison officials to a problem, not to provide personal

notice to a particular official that he may be sued").  Neither Plaintiff's

formal grievance nor his grievance appeal even asked prison officials to

look into the alleged excessive force or retaliation that occurred on

February 24, 2015. Accordingly, Plaintiff has not properly exhausted his

claims.

While Plaintiff asserts that his informal and formal grievances do not

need to be approved to properly exhaust his claims, that is not entirely

correct. Proper exhaustion of administrative remedies requires either an

approved grievance at the institutional level or an approved or denied

grievance appeal. Considering there were no approved grievances at the

institutional level regarding use of excessive force or retaliation during the

relevant time period, any informal or formal grievances that were denied or

returned without action would fail to satisfy the exhaustion requirement.

Plaintiff was required to appeal any denied grievances, or properly re-file

any grievances that were returned without action, and then have those grievance appeals either approved or denied by the Bureau to properly exhaust his claims.

Further, as discussed, none of the approved or denied grievance appeals properly grieved Plaintiff's February 24, 2015 excessive force or retaliation complaints. Because Plaintiff did not properly exhaust his administrative remedies prior to filing his complaint in federal court Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies.

Moreover, Plaintiff's failure to properly exhaust prior to filing suit cannot be excused because he has not alleged that retaliation or threatened retaliation prevented him from properly exhausting prior to filing suit.  Although Plaintiff's complaint alleges that Defendants Silcox and J. Shuler retaliated against Plaintiff for writing grievances by failing to intervene while Defendants J.W. Shuler, Crutchfield, and Gafford subjected Plaintiff to excessive force, Plaintiff does not allege that this retaliation prevented him from filing grievances. Plaintiff alleges just the opposite. In his complaint, Plaintiff claims that he did exhaust his administrative remedies prior to filing suit. In his response, Plaintiff also repeatedly

asserts that he filed grievances related to the alleged February 24, 2015

excessive force and retaliation. Thus, while Plaintiff may or may not have

been retaliated against for writing grievances, nothing suggests that these

threats actually prevented Plaintiff from filing grievances. Plaintiff's failure

to properly exhaust cannot be excused. He is required to exhaust all

administrative remedies available to him under the PLRA and his failure to

do so requires that his claims against Defendants be dismissed.

## V.  Recommendation

Accordingly, it is respectfully **RECOMMENDED** that:

1.    Defendants' motion to dismiss, ECF No. 24, should be
      **GRANTED** for failure to exhaust administrative remedies; and

2.     The case should be closed.

**IN CHAMBERS** this 5th  day of July, 2016.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be
filed within fourteen (14) days after being served a copy thereof. Any
different deadline that may appear on the electronic docket is for the
court's internal use only, and does not control. A copy of objections
shall be served upon all other parties. If a party fails to object to the
magistrate judge's findings or recommendations as to any particular**

claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.